IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY SCHNECKLOTH,<br><br>              Plaintiff,<br><br>vs.<br><br>JANSEN, Warden; ROB BRITTON, JERRY LEE LOVELACE JR., ROB JEFFERY'S, and NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES,<br><br>              Defendants. | **8:24CV437**<br><br>**MEMORANDUM AND ORDER** |

      Plaintiff Larry Schneckloth ("Plaintiff"), a prisoner, filed a pro se Complaint on November 8, 2024, Filing No. 1. The matter is now before the Court to conduct an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915A.

      For the reasons set forth below, this Court finds that summary dismissal of all portions of the Complaint is appropriate with the exception of Plaintiff's Eighth Amendment deliberate indifference to medical needs claim against defendants Jansen and Lovelace in their individual capacities and his official capacity claims seeking prospective relief against these same defendants. Also, in consideration of the nature of the claims which may proceed, this Court has determined appointment of counsel is appropriate. An order addressing the appointment of counsel shall be entered when the appointment has been accepted.

# I. SUMMARY OF COMPLAINT

Plaintiff's Complaint, brought pursuant to 42 U.S.C. § 1983, alleges claims of Eighth Amendment deliberate indifference to medical needs as well as civil conspiracy, and Fifth and Fourteenth Amendment claims, stemming from the denial of medical treatment for his eye, beginning on May 4, 2024, and continuing through the present. Filing No. 1 at 4, 6. Plaintiff names Jansen as Warden at the Omaha Correctional Center (the "OCC"), Rob Britton ("Britton") as Executive Chief Officer at the OCC, Jerry Lee Lovelace Jr. ("Lovelace") as medical director at the OCC, and Robert Jeffreys ("Jeffreys") as Director of the Nebraska Department of Correctional Services ("NDCS") as defendants, bringing suit against each of them in their individual and official capacities. *Id.* at 2–3.

Plaintiff alleges that, although he has requested medical treatment for his eye, he has been denied treatment by the defendants, and as a result of the actions of the defendants he continues to experience a "rapid loss of vision" in his eye. *Id.* at 6. As relief he seeks immediate medical treatment by an eye specialist, as well as actual and punitive damages. *Id.*

# II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

# III. DISCUSSION

Plaintiff alleges claims under the Fifth, Eighth, and Fourteenth Amendments against all defendants in their individual and official capacities.

2

*See* Filing No. 1 at 2–3. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in the Complaint must be reviewed to determine if this standard is met.

**A. Official Capacity Claims**

Plaintiff brings official capacity claims against all defendants seeking monetary relief as well as an order requiring that Plaintiff be seen immediately by an eye specialist. Filing No. 1 at 6. As an initial matter, official capacity claims against individuals are construed as claims against the individual's respective public employer. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."). Here all defendants are employed either by OCC or NDCS. As both OCC and NDCS are operated by the State of Nebraska, Plaintiff's official capacity claims are effectively against the State of Nebraska.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Therefore, any award of monetary relief payable by the state is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress, *see, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir.

1981), which has not occurred in this instance. As such, to the extent Plaintiff seeks monetary damages from any of the defendants in their official capacities, those claims cannot proceed and shall be dismissed.

However, Plaintiff also seeks injunctive relief, asking that defendants be required to furnish him with access to an eye specialist. The doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), is an exception that abrogates a State's sovereign immunity protection. It provides that state officials may be sued in their official capacities for prospective injunctive relief to prevent future federal constitutional or statutory violations. *Id.* "'Prospective relief' is defined broadly to include all relief other than compensatory damages." *Gavin v. Branstad*, 122 F.3d 1081, 1084 (8th Cir. 1997) (citing 18 U.S.C. § 3626(g)(7), (9)). To determine whether a plaintiff has alleged a proper *Ex Parte Young* claim, the federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

Here, it is clear Plaintiff is asking for prospective injunctive relief as he asks this Court to enter an order stopping the defendants from denying him the medical treatment he seeks. Such official capacity claims for prospective relief may proceed to the extent he has stated a claim for relief against any of the named defendants.

## B. Individual Capacity Claims

Plaintiff also raises claims arising under the Fifth, Eighth, and Fourteenth Amendments, as well as what appears to be a civil conspiracy claim against all defendants in their individual capacities. Filing No. 1 at 2–3, 5.

### 1. Eighth Amendment – deliberate indifference to medical needs

Plaintiff alleges Eighth Amendment deliberate indifference to medical needs claims against all defendants in their individual capacities. For the reasons that follow, only Plaintiff's claims against Jansen and Lovelace may proceed.

Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials are forbidden from "unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). A claim of deliberate indifference to medical needs is described as carrying both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006). Finally, "'[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions.'" *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006) (quoting *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)).

The subjective element requires Plaintiff to plead that each defendant acted with a sufficiently culpable state of mind. *Coleman v. Rahija*, 114 F.3d

778, 784 (8th Cir. 1997). As described in *Roberson v. Goodman*, a plaintiff must show a prison official knew of and disregarded the objectively serious medical need. 293 F. Supp. 2d 1075, 1080 (D.N.D. 2003), *aff'd*, 114 F. App'x 772 (8th Cir. 2004) (citing *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); *Miller v. Schoenen*, 75 F.3d 1305, 1309 (8th Cir. 1996) (citing *Estelle*, 429 U.S. at 105)).

Here, Plaintiff alleges that he is blind in one eye and that his vision in his remaining eye is rapidly declining. Filing No. 1 at 5–6, 9. Specifically, Plaintiff alleges his current vision out of his remaining eye appears as if he is "looking though glass smeared with vaseline." *Id.* at 5. As there is no question that Plaintiff's alleged injury and declining vision is objectively serious, for the purposes of initial review, the objective component is met.

To meet the subjective component, presumably as background, Plaintiff attaches an "internal consultation request form" dated August 7, 2019, listing Plaintiff's "prior pertinent history" as "ocular histoplasmosis with macular scar, OD. No treatment indicated at this time, but Dr. Hejkal requests [follow-up] in 3 months." Filing No. 1 at 24. He also attaches a second consultation request form dated November 15, 2019, diagnosing Plaintiff with "choroidal neovascularization from histoplasmosis, left eye," indicating Plaintiff had been given a prescription and the condition was "resolved." *Id.* at 25.

In further support of his claims, Plaintiff attaches copies of the following correspondence between himself and prison officials:

- An "inmate interview request" form dated May 4, 2024, to the "eye clinic" indicating Plaintiff noticed a "distorted blurring spot in [his] left eye while reading," and informing the eye clinic that he has a condition that he was previously treated for in the same eye. The request was responded to on May 8, 2024, by a medical staff

6

member, with the statement "Will get you scheduled!" Filing No. 1 at 13.

- A second "inmate interview request" form dated May 23, 2024, to the "eye clinic" indicating that since Plaintiff submitted his interview request form on May 4, 2024, he "really need[s] to see someone soon" as his eye condition has worsened "considerably." The request was responded to on May 24, 2024, by a staff member, with the statement "Still scheduled to see eye Dr." Filing No. 1 at 14.

- A third "inmate interview request" form dated June 13, 2024, to the "eye clinic" asking when his doctor's appointment will take place and reiterating that his eye condition "requires immediate attention when it flar[e]s up." Plaintiff indicated he feared he would lose his eyesight if was not seen soon. The request was responded to on June 14, 2024, by a staff member, with the statement "Eye Dr. comes once a month. I know youre [sic] condition. I will get you scheduled as soon as I can." Filing No. 1 at 15.

- An "inmate interview request" form dated June 29, 2024, addressed to Warden Jansen informing Jansen of Plaintiff's eye condition, the seriousness of it, and that he has attempted to resolve the issue via communication with the eye clinic. He explained that he has been placed on a waiting list to see the eye doctor but due to the seriousness of his condition, and its worsening, he has concern he may lose sight in his left eye or suffer permanent damage. The request was responded to on July 2, 2024, by what appears to be same staff member who responded to the

- three prior requests, with the statement "Still schedule[d] next visit." Filing No. 1 at 16.

- On July 9, 2024, Plaintiff filed an informal grievance stating he has a medical condition for which he was treated in the past at an eye clinic in Omaha. He further stated that when the condition occurs it must be treated immediately and that all information about the condition is in Plaintiff's medical file. A response dated July 12, 2025, signed by a staff member, stating "Medical reports you are scheduled for the next eye clinic no later than the end of August. Medical advised that your condition is not emergent." Filing No. 1 at 20.

- On July 12, 2024, Plaintiff filed a step one grievance reiterating that, under the specific instructions of his eye specialist, what is occurring with his eye must be treated immediately. Plaintiff demanded to be seen by an eye doctor immediately. A response dated July 12, 2024, again with an illegible signature, stated "Medical report[s] your [sic] are scheduled, but your health concern is not emergent." Filing No. 1 at 21.

- On July 22, 2024, Plaintiff filed a step two grievance, reiterating his complaints from his step one grievance. Filing No. 1 at 23. The step two grievance was responded to by defendant Lovelace on September 5, 2024, stating, "I understand your complaint to be that you wish to be seen by an eye specialist. There is no indication in your medical chart that you are to be seen immediately if your vision decreases. A consultation request has been submitted for you to see an outside provider and the request is pending in review." Filing No. 1 at 22.

- A "health services internal consultation request form" dated August 5, 2024, from provider Matthew A. Schekirke indicating Plaintiff should be referred to Dr. Hejkal (who Plaintiff saw in 2019). Filing No. 1 at 26.

- Plaintiff sent a fourth "inmate interview request" form dated August 14, 2024, to the "eye clinic" asking if his eye treatment had been scheduled. The request was responded to on August 15, 2024, by a staff member, with the statement "Medical director in Lincoln has to approve 1st." Filing No. 1 at 17.

- Plaintiff sent a fifth "inmate interview request" form dated August 31, 2024, to the "eye clinic" asking if his eye treatment had been approved. The request was responded to on September 5, 2024, by a nurse with the statement "In progress." Filing No. 1 at 18.

- Plaintiff sent a sixth "inmate interview request" form dated October 2, 2024, to the "eye clinic" asking if his eye treatment had been approved and scheduled. The request was responded to by a nurse, with the statement "Has not been approved by Medical Director." Filing No. 1 at 19.

A review of the Complaint and the attached correspondence fails to show either Britton or Jeffreys had any knowledge of Plaintiff's eye condition and failed to act on that knowledge as to any specific denial of medical care.[1] Because Plaintiff's Complaint fails to establish Britton and Jeffreys knew of and disregarded Plaintiff's medical condition, Plaintiff's Eighth Amendment claims against Britton and Jeffreys cannot proceed as pleaded.

---

[1] To the extent Plaintiff contends that Jeffreys is also responsible for the failure to address Plaintiff's eye condition because Jeffreys failed to fully check the background of Lovelace, it is unclear to this Court how Jeffreys' hiring of Lovelace would establish Jeffreys' knowledge of Plaintiff's eye condition, much less any denial of care for that eye condition by Jeffreys. Filing No. 1 at 5.

In support of his claims against Lovelace and Jansen, Plaintiff attaches correspondence to his Complaint which establish that Plaintiff informed them both of the seriousness of his eye condition, that it was worsening, and that Plaintiff was concerned that he may lose eyesight in that eye or suffer permanent damage if not treated quickly, and that Jansen did not provide immediate treatment. Filing No. 1 at 16, 21–22. Ultimately their responses to Plaintiff establish a lack of access to immediate treatment. For example, in Lovelace's correspondence to Plaintiff, Lovelace indicated that his review of Plaintiff's medical records did not indicate Plaintiff needed to be seen immediately if his vision decreases and that Lovelace had submitted a consultation request to see an outside provider. Filing No. 1 at 22. The response to Plaintiff from his correspondence to Jansen (which does not appear to be signed by Jansen) also indicates knowledge of Plaintiff's eye condition and that an appointment for Plaintiff's eye to be checked was "scheduled next visit." Filing No. 1 at 16.

While deliberate indifference may be demonstrated by prison doctors who fail to respond to a prisoner's serious medical needs, mere negligence or medical malpractice are insufficient to rise to an Eighth Amendment violation. *Goodman*, 293 F. Supp. 2d at 1080 (citing *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999)). Ultimately the objective portion of the deliberate indifference standard in a case such as this one requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).

Plaintiff alleges that Lovelace should have interpreted his medical records differently and that his failure to do so constitutes a denial of medical care. At this stage in the proceedings that is enough for Plaintiff's claim

10

against Lovelace to proceed. *See e.g. Woodard v. O'Brien*, No. 1:07-cv-121, 2011 WL 1526877, at *7 (N.D. Iowa Apr. 20, 2011) (explaining that inadequate care cases involving sophisticated medical conditions require expert testimony regarding inadequate treatment). To the extent Plaintiff alleges Jansen also should have made such an interpretation, it is less likely that this claim will survive, but for the purpose of initial review it is enough that such a determination is less than clear. Therefore, taking Plaintiff's allegations in his Complaint as true, which the Court must do on initial review, his Eighth Amendment deliberate indifference claim against Lovelace and Jansen may proceed.

### 2. Civil conspiracy

"To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir. 1990) (citing *Haley v. Dormire*, 845 F.2d 1488, 1490 (8th Cir. 1988)). While a plaintiff need not show that each participant knew "the exact limits of the illegal plan," the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996).

Here, Plaintiff concludes that each of the defendants "conspired with a deliberate indifference in denying me a community standard of health care consistent with serious medical needs violating my 5th, 8th, & 14th [A]mendment rights." Filing No. 1 at 3. In support, he offers further conclusory statements about each defendant having conspired with the other defendants to deny him adequate medical treatment for his eye, arguing that Jansen failed to provide transportation to the "proper venue" to receive

11

treatment, Britton stated that Plaintiff's eye condition is "not serious," Jefferys appointed a medical director (Lovelace) who does not meet the Nebraska standards of care, and Lovelace has failed to provide adequate care for him and for other inmates. *Id.* at 5.

Such conclusory statements do not meet the pleading standards required for a conspiracy claim to proceed. *See Wit v. City of Lincoln, Neb.*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And, Plaintiff pleads no facts supporting a joint enterprise between the defendants to deny Plaintiff care. For example, Plaintiff appears to allege that Jefferys' part in the alleged conspiracy was his hiring of Lovelace. This Court cannot fathom a scenario where Jefferys agreed with the other named defendants to hire Lovelace specifically in order to deny Plaintiff medical care, and Plaintiff's Complaint certainly contains no such allegations.

Despite Plaintiff's assurances otherwise, this Court sees no facts pleaded which, if true, support a finding that any of the defendants reached an agreement to deprive Plaintiff of his right to medical care for his eye condition. Therefore, as pleaded, Plaintiff's civil conspiracy claim cannot proceed.

### 3. Fifth and Fourteenth Amendment claims

Plaintiff alleges a Fifth and Fourteenth Amendment due process claim against all defendants. It is unclear how the Fifth Amendment applies to any of the allegations Plaintiff raises in his Complaint as "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions." *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n. 2 (8th Cir. 2009). As Plaintiff's allegations relate solely to state actions, any Fifth Amendment due process claim must fail. *See Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010).

Plaintiff also appears to alleges the same deliberate indifference to medical needs claim for denial of access to adequate care under the Fourteenth Amendment as he did under the Eighth Amendment. While the Eighth Amendment applies to cases brought by prisoners who have been convicted, those same types of claims must instead be analyzed under the Fourteenth Amendment in the case of pretrial detainees. *Stearns v. Inmate Servs. Corp., et al.*, 957 F.3d 902 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). As Plaintiff alleges he is a convicted and sentenced state prisoner and not a pretrial detainee, any Fourteenth Amendment deliberate indifference claims must be dismissed.

IT IS THEREFORE ORDERED that:

1. Only Plaintiff's Eighth Amendment deliberate indifference to medical needs claims against defendants Lovelace and Jansen in their individual capacities and as his official capacity claims seeking prospective relief against these same defendants may proceed.

2. The remainder of Plaintiff's claims against Jansen and Lovelace and all other defendants in their individual and official capacities are dismissed without prejudice.

3. For service of process on Lovelace and Jansen, in their individual capacities, the Clerk of Court is directed to complete two sets of summons and USM-285 forms for each Defendant. The service address for the first set of forms is:

Office of the Nebraska Attorney General
2115 State Capitol
P.O. Box 98920
Lincoln, NE 68509.

For service of process on Warden Jansen in his individual capacity, the service address for the second set of forms is:

13

P.O. Box #11099
Omaha, NE 68110-2766

For service of process on Defendant Lovelace in his individual capacity, the service address for the second set of forms is:

P.O. Box #94661
Lincoln, NE 68509-4661

4. The Clerk of Court shall forward the summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 1, and this Memorandum and Order to the United States Marshals Service

5. The Marshals Service shall serve Defendants Lovelace and Jansen in their individual capacities by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

6. The Marshals Service shall also serve Defendants Lovelace and Jansen in their individual capacities by certified mail or other authorized method of service at the addresses shown above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[2]

8. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until **May 27, 2025**, to complete service of process.

9. Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

10. The Clerk of Court is directed to set a case management deadline in this case with the following text: **May 27, 2025**: service of process to be completed.

11. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

12. An order appointing counsel shall be entered in due course.

---

[2] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

Dated this 26th day of February, 2025.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge